IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v.  § | Criminal No. **3:21-CR-191-L** |
| § | |
| **JAMES PAUL ABRAM** § | |

## **MEMORADUM OPINION AND ORDER**

Sentencing in this case was initially set for April 4, 2023. During the brief hearing held on this date, however, the court expressed concern regarding the parties' agreement that Defendant James Paul Abram is not eligible for a sentencing enhancement under the Armed Career Criminal Act ("ACCA"). The court, therefore, continued the sentencing hearing pending further briefing by the parties. After researching the issue and revisiting the parties' objections and clarifications to the Presentence Investigation Report ("PSR") regarding application of the ACCA enhancement, the court determines that further briefing by the parties is not necessary, as this issue can be decided on legal grounds urged by the defense rather than the parties' agreement based on nonbinding policy considerations. Accordingly, for the reasons herein explained, the court **concludes** that Defendant Abram is not eligible for an ACCA enhancement and **sustains** his objection to being sentenced under the ACCA.

Defendant Abram pleaded guilty to Count 1 of a single-count Indictment for Possession of a Firearm by a Convicted Felon, 18 U.S.C. §§ 922(g)(1) and 924(e). The penalty for this offense varies depending on whether the ACCA applies. The maximum sentence for § 922(g) offenses is ten years in prison; however, a minimum sentence of fifteen years is mandated if the ACCA applies. *Wooden v. United States*, 142 S. Ct. 1063, 1068 (2022). The ACCA applies when "(1) a § 922(g) offender has previously been convicted of three violent felonies, and (2) those three

**Memorandum Opinion and Order – Page 1**

felonies were committed on 'occasions different from one another.'" *Id.* at 1070 (quoting § 924(e)(1)).

In this case, Defendant Abram contends that neither of these requirements is satisfied. The parties' clarifications and objections to the probation officer's PSR recommendation that the ACCA applies, however, focus primarily on the second "occasions" requirement and *Wooden*'s effect on existing ACCA precedent. In *Wooden*, the Supreme Court addressed the division among Courts of Appeals regarding the meaning of the ACCA's "occasions" clause. *Wooden*, 142 S. Ct. at 1068. Wooden was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). *Id.* at 1067-68. The district court sentenced *Wooden* under the ACCA because he had ten prior burglary convictions, and the Sixth Circuit affirmed the sentence. *Id.* at 1067-68.

On appeal, the Government argued that the ACCA applied. Although the defendant's burglaries occurred on the same night and involved the burglary of a single storage facility and stealing items from ten different storage units within the storage facility, the Government contended that the ACCA's different occasions-requirement was satisfied because the burglaries of the units occurred in a sequential rather than simultaneous manner. *Id.* at 1069. Thus, according to the Government, it would have been impossible for Wooden to enter multiple storage units "at once." *Id.*

The Supreme Court disagreed and concluded that this argument was at odds with "[t]he ordinary meaning of the word 'occasion,'" as well as the ACCA's history and purpose. *Id.* The Court recognized that a criminal defendant may, in limited circumstances, "satisfy the elements of multiple offenses in a single instant" as urged by the Government. *Id.* at 1070. The Court, nevertheless, determined that "the Government's hyper-technical focus on the precise timing of

**Memorandum Opinion and Order – Page 2**

elements," which could "make someone a career criminal in the space of a minute," had the effect of collapsing the ACCA's two separate requirements into one. *Id.* The Court, therefore, concluded that the determination of whether the "occasions" requirement was satisfied entailed an inquiry "more multi-factored in nature." *Id.*

In this regard, *Wooden* explained that "a range of circumstances may be relevant to identifying episodes of criminal activity," and "[t]iming of course matters, though not in the split-second, elements-based way the Government" proposed:

> Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.
>
> For the most part, applying this approach will be straightforward and intuitive. In the Circuits that have used it, we can find no example (nor has the Government offered one) of judges coming out differently on similar facts. In many cases, a single factor—especially of time or place—can decisively differentiate occasions. Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a "significant distance." *United States v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993); *see, e.g., United States v. Riddle*, 47 F.3d 460, 462 (1st Cir. 1995) (per curiam). In other cases, the inquiry just as readily shows a single occasion, because all the factors cut that way. That is true, for example, in our barroom-brawl hypothetical, where the offender has engaged in a continuous stream of closely related criminal acts at one location. Of course, there will be some hard cases in between, as under almost any legal test. When that is so, assessing the relevant circumstances may also involve keeping an eye on ACCA's history and purpose[.] . . . *See infra*, at 1072-1074. But in law as in life, it is usually not so difficult to identify an "occasion": Given that the term in ACCA has just its ordinary meaning, most cases should involve no extra-ordinary work.

*Id.* at 1070-71.

Applying this approach, the Supreme Court concluded that Wooden's burglary convictions did not satisfy the ACCA's requirement that three of a defendant's felonies occur on different occasions:

> [E]very relevant consideration shows that Wooden burglarized ten storage units on a single occasion, even though his criminal activity resulted in double-digit convictions. Wooden committed his burglaries on a single night, in a single uninterrupted course of conduct. The crimes all took place at one location, a one building storage facility with one address. Each offense was essentially identical, and all were intertwined with the others. The burglaries were part and parcel of the same scheme, actuated by the same motive, and accomplished by the same means. Indeed, each burglary in some sense facilitated the next, as Wooden moved from unit to unit to unit, all in a row. And reflecting all these facts, Georgia law treated the burglaries as integrally connected. Because they "ar[ose] from the same conduct," the prosecutor had to charge all ten in a single indictment. Ga. Code Ann. § 16-1-7(b); *see Morgan v. State*, 220 Ga. App. 198, 199-200, 469 S.E. 2d 340, 341–343 (1996) (holding that, under § 16-1-7(b), similar drug offenses had to be charged together because they occurred "very close in time" as "part of an ongoing chain of events"); *supra*, at 1067-1068. The indictment thus confirms what all the circumstances suggest: One criminal occasion notwithstanding ten crimes.

*Id.* at 1071 (footnote omitted). Thus, Wooden's ten convictions for burglarizing ten storage units were for offenses that were committed during a single occasion, not ten separate occasions. *Id*. at 1069-71. Moreover, nothing in *Wooden* suggests a change in the law that would require this issue to be decided by a jury rather than a court at sentencing.

The Government, however, appears to disagree. In response to the probation officer's recommendation in the PSR that the court sentence Defendant Abram under the ACCA, it filed "one clarification" to the PSR on November 1, 2022, asserting that, in the Justice Department's view, Wooden requires the occasions issue to be decided by a jury applying a reasonable doubt or admission of the defendant:

> In the context of the Armed Career Criminal Act, the Fifth Circuit has held that the Sixth Amendment does not require a jury to find that a defendant's prior offenses were committed on occasions different from one another. *United States v. Davis*, 487 F.3d 282, 288 (5th Cir. 2007). After the Supreme Court's decision in

**Memorandum Opinion and Order – Page 4**

>   *Wooden v. United States*, 142 S. Ct. 1063 (2022), the Department of Justice has changed its position to hold a belief that the requirement of offenses committed on different occasions mu[s]t be proved beyond a reasonable doubt to a jury or admitted by a defendant.

Govt's Clarification (Doc. 33). For this reason, the Government asserts that, "[b]ecause no such stipulation or jury finding was made in this case, [it] takes the view that [Defendant Abram] is not eligible for an enhanced sentence under the [ACCA]." *Id.* The Government further asserts that "[h]ad [it] maintained its current position at the inception of [Defendant Abram's] case, however, it would have required the necessary charging language, stipulations, or factual findings necessary to invoke the ACCA and believes he would have been eligible for an ACCA sentence." *Id.* The Government, therefore, "requests that the [c]ourt take that into consideration when determining an appropriate sentence under the sentencing factors of 18 USC [§] 3553(a)." From this, it appears that, although the Government does not believe that the ACCA applies in this case for technical reasons post-*Wooden*, it nevertheless takes the position that any sentence imposed should adequately account for the seriousness of Defendant Abram's criminal history.

Defendant Abram also filed objections on January 6, 2023, to paragraphs 21, 24, 72, 73, 76, 78, and 79 of the PSR (and the Addendum to the PSR), contending that he is not eligible for an ACCA enhancement "in light of the Government's concession" and its practice with respect to the ACCA's different occasions requirement, which he believes is now followed by the Department of Justice nationwide. Def.'s Obj. 7 (Doc. 35). Defendant Abram further contends that "*Wooden*'s multi-faceted inquiry has raised questions about whether the Fifth and Sixth Amendments require a grand jury to allege, and a trial jury to unanimously find, that ACCA predicates were committed on separate occasions." *Id*. at 5. In addition, he argues that the ACCA's different occasions requirement is not satisfied here because, even if *Wooden* did not

**Memorandum Opinion and Order – Page 5**

overrule prior Fifth Circuit precedent allowing district courts to decide whether the different occasions requirement has been met, the court is limited to examining only "*Shepard*-approved documents" in making this determination.  *See* Def.'s Obj. 4-14 (citing *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

As Defendant Abram correctly notes, the Supreme Court in *Wooden* expressly declined to address "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion . . . because Wooden did not raise it." Def.'s Obj. 5 (quoting *Wooden*, 142 S. Ct. at 1068 n.3). Thus, *Wooden* did not impliedly or explicitly overrule the Fifth Circuit's holding in *United States v. Davis* that the Sixth Amendment does not require a jury to find that a defendant's prior offenses were committed on occasions different from one another.  Moreover, the Fifth Circuit recently rejected a similar argument by a defendant who asserted, based on *Wooden*, "that the facts of his prior convictions, which he did not admit in his plea, cannot be used against him via an ACCA enhancement unless submitted to a jury." *United States v. Williams*, 2023 WL 2239020, at *1 (5th Cir. Feb. 23, 2023) (per curiam).

In *Williams*, the Fifth Circuit concluded that this argument was "foreclosed by Supreme Court precedent." *Id*. (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998)). The Fifth Circuit also noted that "[t]he Supreme Court has repeatedly declined invitations to revisit *Almendarez-Torres*." *Williams*, 2023 WL 2239020, at *1 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000); *Alleyne v. United States*, 570 U.S. 99, 111 n.1 (2013); and *James v. United States*, 550 U.S. 192, 214 n.8 (2007)).  The Fifth Circuit in *Williams* further concluded that *Wooden* "is not to the contrary" because, while "Williams reads it to forbid district courts from consulting the record to determine whether ACCA predicate offenses occurred on separate occasions, as § 924(e) requires, but in actuality, "*Wooden* commands that district courts investigate the occasions

**Memorandum Opinion and Order – Page 6**

of a defendant's past criminal conduct" by "directing courts to pursue a 'multi-factored' analysis of a defendant's § 924(e) occasions." *Williams*, 2023 WL 2239020, at *1 (citing *Wooden*, 142 S. Ct. at 1070-71).

The undersigned is bound by legal precedent, not the policy of the Justice Department, which can vary from administration to administration. The court, therefore, declines to accept the parties' agreement that the ACCA does not apply in this case for policy reasons. While *Williams* is not a published opinion, it is persuasive authority and carries more weight than the parties' agreement based on ever-changing policy considerations—at least for now until this issue is addressed by the Supreme Court at some later date.

Even so, the court agrees with Defendant Abram that application of the ACCA enhancement in this case is not supported for legal reasons, as the Fifth Circuit has continued to hold, even after *Wooden*, that "precedent limits the types of documents that district courts may consult to determine which offenses are ACCA predicates." *Williams*, 2023 WL 2239020, at *1 (citing *Shephard*, 544 U.S. at 16; and *United States v. Garza-Lopez*, 410 F.3d 268, 274 (5th Cir. 2005)). In *Shepard v. United States*, the Court held that the district courts are "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shephard*, 544 U.S. at 16. The Fifth Circuit in *Garza-Lopez*, therefore, concluded that, "under *Shepard*, a district court is not permitted to rely on a PSR's characterization of a defendant's prior offense for enhancement purposes." *Garza-Lopez*, 410 F.3d at 274. In *Williams*, because the district court did not rely solely on the PSR— the court had before it *Shepard*-approved documents in the form of exhibits produced by the Government that satisfied the ACCA's requirements—the Fifth Circuit

**Memorandum Opinion and Order – Page 7**

rejected the defendant's argument that the district court impermissibly relied on the PSR to support the mandatory ACCA sentenced imposed. *Williams*, 2023 WL 2239020, at *1.

The PSR in this case concludes that the ACCA's enhanced penalties apply because Defendant Abram "has at least three prior convictions for a violent felony [that] were committed on different occasions." PSR ¶ 21 (Doc. 32-1). According to the PSR, these convictions include two state convictions for Burglary of a Habitation in Case Nos. F-0523578 and F-0635152, "which occurred on August 22, 2005, and on December 6, 2006," and one state conviction for Aggravated Robbery with a Deadly Weapon in Case No. F-0962698, "which occurred on December 30, 2009." *Id.* In responding to the Government's clarification and Defendant Abram's objection regarding application of the ACCA enhancement, the Addendum to the PSR reiterates the foregoing information. Addendum 1-2 (Doc. 36-1). In addition, the probation officer notes that "*Shepard's* documents were used to determine the defendant's adjudications and arrests, which reflect the defendant committed these offenses on separate occasion[s]. Therefore, no changes will be made to the Presentence Report unless otherwise directed by the [c]ourt." *Id.* at 1.

No *Shepard* documents, however, are attached to the PSR or Addendum. Further, the Government has not submitted any *Shepard* documents for the court's consideration to address this objection by Defendant Abram. The Government has, instead, continued to rely on its policy argument, which it reiterated during the hearing on April 4, 2023. Because the court cannot rely on the probation officer's characterization in the PSR and Addendum of Defendant Abram's prior convictions to determine whether both requirements of the ACCA are met here, it determines that his objection on this ground regarding application of the ACCA should be and is hereby **sustained**. As the issue of whether the ACCA applies has been resolved, the court need not address the other ACCA arguments urged by Defendant Abram to the PSR and Addendum.

Memorandum Opinion and Order – Page 8

By separate order, the court will reset the sentencing hearing at which time it will address Defendant Abram's remaining unrelated objection to paragraph 41 of the PSR and all other relevant sentencing matters. The court, however, will not revisit its decision on the ACCA issue or entertain additional argument or evidence in this regard, as the parties had sufficient opportunity to file written objections to the PSR and Addendum and submit evidence for the court's consideration.

**It is so ordered** this 18th day of April, 2023.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge